# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARK D. HARRISON,** | CIVIL ACTION NO. 1:05-CV-2323 |
| Plaintiff | (Judge Conner) |
| v. | |
| **GREGORY J. AMMONS, WARREN S. CORNELIUS,** and the **CAMP HILL BOROUGH,** | |
| Defendants | |

## MEMORANDUM

Plaintiff Mark Harrison ("Harrison") brings this action pursuant to 42 U.S.C. § 1983 alleging that his civil rights were violated when he was arrested by the Camp Hill police on November 9, 2003. Harrison also raises claims for municipal and supervisory liability and seeks redress under state tort law. Defendants Gregory Ammons and the Camp Hill Borough have filed a motion for summary judgment (Doc. 39); defendant Warren Cornelius has filed a separate motion for summary judgment (Doc. 42). For the reasons that follow, both motions will be granted.

I.  **Statement of Facts**

The facts underlying this matter are largely undisputed.[1] After dark on November 9, 2003, Harrison was driving a gray Ford minivan through the Camp Hill Borough. (Doc. 43 ¶ 1; Doc. 54 ¶ 1.) The minivan belonged to Tina Cornelius ("Tina"), the estranged wife of defendant Warren Cornelius ("Cornelius"), and

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, who is the nonmoving party. See infra Part II. However, Harrison has not disputed the majority of the facts in this matter. Local Rule 56.1 requires the nonmoving party's statement of facts to respond to the numbered paragraphs set forth in the moving party's statement, and to "include references to the parts of the record that support the statements." L.R. 56.1. Harrison disregards this requirement, and his responsive statements of fact are replete with unsupported factual assertions. (See Docs. 54, 56.). The Rule 56.1 statement that Harrison filed in response to defendant Warren Cornelius' summary judgment briefing contains thirty-eight numbered paragraphs and no citations to the record; virtually all of the numbered paragraphs contain no more than the word "Admitted" or "Denied." (See Doc. 54.) The Rule 56.1 statement that Harrison filed in response to defendants Gregory Ammons and the Camp Hill Borough contains fifty-three numbered paragraphs and three citations to the record; again, the majority of these paragraphs contain no more than the word "Admitted" or "Denied."

The deficiency of these submissions rendered more glaring by the fact that Harrison was thrice admonished by the court to file statements of material fact that "include specific references to the parts of the record that support the statements" and that "respond[] to the numbered paragraphs in defendants' statements of materials facts." (Doc. 53 ¶ 2 (emphasis in original); see also Docs. 45, 48.) Therefore, it should come as no surprise that with the exception of those facts clearly disputed by Harrison *and* supported by adequate record references, the court will adopt defendants' statements of fact in *toto*. See L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); see also Novinger Group, Inc. v. Hartford Life & Annuity Ins. Co., Civ. A. No. 1:06-CV-0188, 2008 WL 5378288, at *1 n.2 (M.D. Pa. Dec. 23, 2008) (Conner, J.) (adopting moving party's statement of facts when non-movant failed to comply with Local Rule 56.1); United States ex rel. Paranich v. Sorgnard, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003) (Conner, J.) (same), aff'd, 396 F.3d 326, 330 & n.5 (3d Cir. 2005).

2

Harrison was using the vehicle with Tina's permission. (Doc. 43 ¶ 1; Doc. 54 ¶ 1.) As Harrison traveled northbound on South Seventeenth Street, he passed Cornelius, an officer with the Camp Hill police department who was on patrol in a marked police cruiser. (Doc. 43 ¶ 2; Doc. 54 ¶ 2.) Cornelius observed Harrison travel through a red traffic light; he thereafter activated his lights and siren and commenced pursuit. (See Doc. 43 ¶¶ 2-3; Doc. 54 ¶¶ 2-3.)

Harrison saw the lights and heard the siren, but neglected to pull the minivan to the shoulder. (Doc. 43 ¶ 3; Doc. 54 ¶ 3.) Instead, he continued driving for an additional two and one-half blocks, making one left and one right turn, and thereafter parking his vehicle on the street outside Tina's residence. (See Doc. 43 ¶¶ 3-4; Doc. 54 ¶¶ 3-4.) Harrison explained that he knew Cornelius was following him, and his intention was simply to "proceed[] to a safe location." (Doc. 65 at 51-52.) Harrison recognized Cornelius because he had been confronted by the officer on at least two occasions, during both of which Cornelius aggressively warned Harrison against socializing with Tina.[2] (See id. at 36-39; 63.)

---

[2] Harrison, who is African American, testified that he was visiting Tina on October 3, 2003 when Cornelius entered the residence and warned Harrison to "[s]tay away from my family, nigger." (Doc. 65 at 63.) On October 10, 2003, Harrison was again visiting Tina when Cornelius entered the residence and placed Harrison under arrest on an outstanding tax warrant. (See id. at 36-39.) Harrison apparently owed a city tax, of which he claims he was unaware. (See id. at 37-38.) When Cornelius placed Harrison under arrest, he purportedly asked whether Harrison "g[ot] the hint?" (Id. at 37.) Although Harrison discussed these instances during his deposition, neither event comprises part of the instant complaint.

After Harrison parked the minivan, he exited the vehicle and stood beside it. (Doc. 43 ¶ 4; Doc. 54 ¶ 4; Doc. 65 at 54-55.) Cornelius approached and informed Harrison that he was under arrest for fleeing and eluding, and ordered him to turn and face the minivan. (Doc. 43 ¶ 5; Doc. 54 ¶ 5; see Doc. 65 at 62.) Harrison complied, positioning both hands atop the hood of the vehicle. (See Doc. 65 at 59.) Cornelius then placed a handcuff around one of Harrison's wrists, but Harrison would not permit his other wrist to be restrained. (See Doc. 43 ¶ 5; Doc. 54 ¶ 5.) One eyewitness, Kelly Whitman ("Whitman"), stated that she saw Harrison cross his arms in front of his chest, thwarting Cornelius' attempt to shackle him. (See Doc. 43, Ex. B at 12.) Harrison acknowledged as much, explaining, "I just didn't allow my other arm to be handcuffed." (Doc. 65 at 59.) At some point, Tina emerged from the front door of her residence and began "yelling . . . profanity" at Cornelius; Cornelius ordered Tina to reenter the home. (See Doc. 43, Ex. B at 11-12.) According to Whitman, the scene was one of complete "chaos." (Id. at 12.)

A second police officer soon arrived on the scene and began to assist Cornelius in his attempt to complete Harrison's arrest. (See id. at 13; Doc. 43, Ex. C at 14.) Both officers spent the next several minutes unsuccessfully endeavoring to restrain Harrison, who continued to resist. (See Doc. 43, Ex. B at 13; Doc. 43, Ex. C at 15, 19.) Cornelius eventually deployed pepper spray upon Harrison's face. (See Doc. 43, Ex. B at 13; Doc. 43, Ex. C at 14.) Shortly thereafter, the officers were able to fully handcuff Harrison and place him under arrest. (See Doc. 43 ¶ 9; Doc. 54 ¶ 9.) Harrison was later charged in a criminal information with resisting arrest,

4

disorderly conduct, failure to stop at an intersection, failure to yield to an emergency vehicle, and fleeing or attempting to elude a police officer. (See Doc. 43, Ex. G.) He was adjudicated not guilty on the charge that he failed to stop at an intersection; the Commonwealth dismissed the remainder of the charges contained in the information. See Docket, Commonwealth v. Harrison, No. CP-21-CR-0002531-2003 (Pa. C.P. Cumberland County).

On November 8, 2005, Harrison commenced the instant action by filing a three-count complaint, which invoked an array of constitutional provisions, the federal civil rights statutes codified at 42 U.S.C. §§ 1983, 1985, and 1988, and the Pennsylvania common law. (See Doc. 1 ¶ 8.) Harrison asserted that he had been falsely arrested, that he had been subjected to malicious prosecution, that he had been targeted for arrest because of his race, and that law enforcement utilized excessive force when effectuating his arrest. Defendants moved to dismiss count three of the complaint on May 16, 2007.[3] (See Doc. 14.) The court granted this motion on July 24, 2007, (see Doc. 17), after which the parties entered a lengthy period of discovery. On June 12, 2008, defendants Gregory Ammons ("Chief Ammons") and the Camp Hill Borough (the "Borough") filed a motion for summary judgment, (Doc. 39); Cornelius filed a separate motion for summary judgment on

---

[3] Count three set forth a claim for "gross negligence"—specifically, Harrison alleged that Chief Ammons and the Camp Hill Borough negligently hired, trained, and supervised Cornelius. (See Doc. 1 ¶¶ 39-45.)

5

June 16, 2008, (Doc. 42). Both motions have been fully briefed and are ripe for disposition.

**II.     Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmovant on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

**III.    Discussion**

Harrison brings his constitutional claims pursuant to §§ 1983, 1985, and 1988 of Title 42 of the United States Code. These sections create no substantive rights, but instead provide a remedy for the infringement of rights created by other federal laws. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002) (discussing § 1983); Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979) (discussing § 1985); Krier v. Amodio, 441 F. Supp. 181, 182 n.1 (E.D. Pa. 1977) (discussing

6

§ 1988); Ammlung v. Chester, 355 F. Supp. 1300, 1304 (E.D. Pa. 1973) (same), aff'd, 494 F.2d 811 (3d Cir. 1974). Because defendants have moved for summary judgment, they bear "the initial responsibility of informing the district court of the basis for [the] motion[s], and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and *admissions on file*'" which they believe establish the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 (emphasis added) (quoting FED. R. CIV. P. 56).

To meet their burden of production, defendants rely upon several admissions secured via Federal Rule of Civil Procedure 36. Rule 36 provides, *inter alia*, that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either . . . ." FED. R. CIV. P. 36(a)(1). Admissions obtained pursuant to Rule 36 may thereafter be used as proof in support of a motion for summary judgment. See FED. R. CIV. P. 56(c) (explaining that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file" show there is no genuine issue of material fact in dispute); 8A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2264, at 569 (2d ed. 1994) ("Admissions obtained by use of Rule 36 may show that there is no genuine issue as to any material fact and justify the entry of summary judgment under Rule 56."); see also Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund of Phila. & Vicinity, 850 F.2d 1028, 1036 n.9 (3d Cir. 1988) (same).

7

Facts or opinions which a party admits are considered conclusive and binding. FED. R. CIV. P. 36(b) ("A matter admitted under this rule is conclusively established . . . ."); see also Airco Indus., 850 F.2d at 1037 (explaining that a Rule 36 admission whose meaning is certain is "an unassailable statement of fact that narrows the triable issues in the case"); McNeil v. AT&T Universal Card, 192 F.R.D. 492, 494 & n.4 (E.D. Pa. 2000) (stating that "[a]dmissions are conclusively binding on parties at trial, and carry more weight than a witness statement, deposition testimony, or interrogatories, because once made, admissions cannot be countered by other evidence"); 8A WRIGHT ET AL., § 2264, at 569-70. By leave of court, however, a party may move to withdraw or amend its admissions when so doing will advance "presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." FED. R. CIV. P. 36(b). In this way, a party that makes a damaging admission through error or inadvertence has a means by which to correct that mistake. A party's failure to move for withdrawal or amendment under Rule 36(b), however, "operate[s] to waive any objection to the truth of [the admission's] contents." Airco Indus., 850 F.2d at 1037.

In the instant matter, it is undisputed that defendants served Harrison with requests for admission on April 11, 2008, and that Harrison was required to respond on or before May 14, 2008. (Doc. 43 ¶¶ 13, 16; Doc. 54 ¶¶ 13, 16.) No such response

8

was timely delivered,[4] (see Doc. 43, Ex. E ¶ 6), nor did Harrison request an extension of time within which to respond, (id. ¶ 7; see also Doc. 43 ¶ 18; Doc. 54 ¶ 18). Harrison also never sought leave of court in order to withdraw or amend his

---

[4] Defendants proffer record evidence, in the form of a sworn certification, that Harrison failed to timely respond to the requests for admission. (See Doc. 43, Ex. E.) In reply, Harrison baldly denies the veracity of the certification, but offers no evidence—or argument—to indicate that his responses to the requests were timely filed. (See Doc. 54 ¶ 17; see also Doc. 55.) The court will not credit this bald denial. See supra note 1 (explaining that unsupported statements of fact in Harrison's Rule 56.1 submissions will not be credited by the court); see also United States v. Klimek, 952 F. Supp. 1100, 1103 n.1 (E.D. Pa. 1997) (deeming matters in party's Rule 36 requests to be admitted when defendant neglected to refute record evidence establishing his failure to respond to the requests).

admissions under Rule 36(b).[5]  As a result, the matters detailed in defendants'

requests for admission are deemed conclusively admitted.  See Airco Indus., 850

F.2d at 1036-37; Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976),

cert. denied, 429 U.S. 1038 (1977); McNeil, 192 F.R.D. at 494.

Harrison's admissions are dispositive.  He admits that (1) his arrest on

November 9, 2003 was lawful and based upon probable cause; (2) Cornelius used

---

[5] Defendants delivered a total of forty-five numbered requests to Harrison. (See Doc. 43, Ex. D.)  Although Harrison submits what appear to be responses to request numbers 6, 22, 23, 25-28, 34, 37-43, and 45, not a single submission clearly admits or denies that which is requested.  (See Doc. 54 attachment.)  Furthermore, many of the "responses" are woefully inadequate, and simply refer to the allegations contained in the complaint.  (See id.)  More importantly, Harrison offers no evidence to suggest that these responses were actually delivered to defendants in compliance with the Federal Rules, nor does he explain his failure to respond to request numbers 1-5, 7-21, 22, 24, 29-33, 35, and 44.  In short, the court will not credit Harrison's "responses," for they are both procedurally and substantively deficient.
    Even if Harrison believes that his responses were sufficient, however, his failure to move for withdrawal of the admissions is nonetheless enigmatic.  Such a precautionary motion would have imposed little cost and significant benefit.  Moreover, Harrison certainly knew by June 16, 2008 that defendants would press the issue because they spend a considerable portion of their supporting brief describing the admissions of record.  (See Doc. 44 at 6-8.)  There is no time limitation contained in Rule 36(b), and nothing would have prevented Harrison from filing a motion to withdraw after he received defendants' brief.  However, Harrison did not file a motion to withdraw; he did not present any record evidence refuting defendants' evidence that he failed to timely respond; and he did not even *address* the Rule 36 issue in his Rule 56 opposition briefing.  Consequently, under the plain language of the Federal Rules, the matters addressed in defendants' requests are deemed admitted.  See FED. R. CIV. P. 36(b); McNeil, 192 F.R.D. at 494; United States v. Klimek, 952 F. Supp. 1100, 1103 n.1 (E.D. Pa. 1997); see also Wright v. Paul Revere Life Ins. Co., 291 F. Supp. 2d 1104, 1111-12 (C.D. Cal. 2003) (deeming requests admitted when plaintiff neither timely responded to the requests nor filed a motion to withdraw the admissions); Fed. Trade Comm'n v. Medicor, LLC, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002) (same).

reasonable force in effectuating this arrest; (3) Cornelius acted reasonably in light of the facts and circumstances; (4) Cornelius did not assault Harrison during the course of the arrest; (5) Harrison was not maliciously prosecuted following his arrest; (6) Cornelius was properly trained and supervised by the Camp Hill police department and Chief Ammons; (7) Harrison suffered no physical, psychological, or emotional harm as a result of his arrest; and (8) the actions of Cornelius and Chief Ammons were not outrageous or beyond all bounds of decency in a civilized society. (See Doc. 43, Ex. D ¶¶ 22-23, 25-32, 37-45.) The sum result of these admissions is Harrison's conclusive concession that he was not falsely arrested or exposed to a malicious prosecution, nor was he inappropriately targeted because of his race, or subjected to excessive force. In short, Harrison's admissions demonstrate that there is no genuine issue of material fact regarding any of the claims alleged in the complaint.

The court recognizes that its disposition deprives Harrison of the opportunity to contest the merits of his case. The harshness of this ruling is tempered, however, by the absence of evidence contradicting Harrison's Rule 36 admissions. See Airco Indus., 850 F.2d at 1036-37 (noting lack of record evidence contradicting litigant's Rule 36 admissions). Quite simply, Harrison acknowledges that he unlawfully proceeded through a red traffic light, (see Doc. 43 ¶ 2; Doc. 54 ¶ 2), he acknowledges that he knowingly eluded a police officer, (see Doc. 43 ¶ 3; Doc. 54 ¶ 3), and he acknowledges that he resisted the attempt both by Cornelius and another law enforcement officer to effectuate his arrest, (see Doc. 65 at 57-58). These

concessions, coupled with Harrison's Rule 36 admissions,[6] amount to a factual

presentation whose one-sidedness compels judgment as a matter of law.

---

[6] The court would be remiss were it not to comment upon the inattentive conduct of plaintiff's counsel. Count three of Harrison's complaint was dismissed after plaintiff's counsel failed to file a brief in opposition thereto. (See Docs. 16-17); see also supra note 4. On December 21, 2007, the court ordered plaintiff's counsel to produce documents after he did not respond to defendants' first request for production for nearly two months. (See Doc. 33.) When plaintiff's counsel failed to respond to defendants' first set of interrogatories, the court was required to compel his response under threat of sanctions. (See Doc. 37.) The pattern continued when plaintiff's counsel failed to timely oppose either of defendants' motions for summary judgment, which required the court to yet again extend the briefing period and compel a response under the threat of dismissal. (See Docs. 45, 48.) Plaintiff's counsel not only failed to file his opposition briefs within the extended filing period, but he then requested an extension of time one day *after* his extended filing deadline had expired. (See Doc. 51.) The court ordered plaintiff's counsel to show cause why Harrison's complaint should not be dismissed, but counsel made virtually no attempt to do so. (See Doc. 53.) In fact, the court held that counsel's attempt to show cause was insufficient, "but that the extreme sanction of deeming defendants' motions for summary judgment unopposed would punish plaintiff for the negligent conduct of his counsel." (Id.) As noted, the papers opposing summary judgment were not compliant with Local Rule 56.1, see supra note 1, and the evidence proffered was so sparse that the court was required to compel *defendants' attorney* to supplement the record on Harrison's behalf, (see Doc. 63). For those entrusted to represent the legal interests of others, attentiveness to a case calendar is the least that a client may reasonably expect. Plaintiff's counsel is admonished to be fully alert to future court deadlines, as the court is unlikely to tolerate any such dilatoriness in future proceedings.

## IV. Conclusion

The admissions obtained by defendants pursuant to Rule 36 of the Federal Rules of Civil Procedure demonstrate that there is no genuine issue of material fact with respect to any of Harrison's claims. Summary judgment is warranted.

An appropriate order follows.

    S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated: August 19, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK D. HARRISON,** | : | **CIVIL ACTION NO. 1:05-CV-2323** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **GREGORY J. AMMONS, WARREN S. CORNELIUS, and the CAMP HILL BOROUGH,** | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 19th day of August, 2009, upon consideration of defendants' motions (Docs. 39, 42) for summary judgment, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motions (Docs. 39, 42) for summary judgment are GRANTED. See FED. R. CIV. P. 56(c).

2. The Clerk of Court is directed to enter JUDGMENT in favor of defendants and against plaintiff on all claims.

3. The Clerk of Court is instructed to CLOSE this case.

                                                                   S/ Christopher C. Conner
                                                             CHRISTOPHER C. CONNER
                                                             United States District Judge